1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF TEXAS

3                      WACO DIVISION

4  AMERICAN PATENTS, LLC         *
                                 *
5                                *
   VS.                           * CIVIL ACTION NO. W-18-CV-339
6                                *
   MEDIATEK, INC, ET AL          *    May 30, 2019
7
        BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
8                        MOTION HEARING

9  APPEARANCES:

10 For the Plaintiff:          Stafford Grigsby Helm Davis, Esq.
                               The Stafford Davis Firm, PC
11                             The People's Petroleum Building
                               102 North College Ave, 13th Floor
12                             Tyler, TX 75702

13                             Larry D. Thompson, Esq.
                               Zachariah Harrington, Esq.
14                             Antonelli, Harrington Thompson LLP
                               4306 Yoakum Blvd., Suite 450
15                             Houston, TX 77006

16 For the Defendants:         Eric H. Findlay, Esq.
                               Findlay Craft, P.C.
17                             102 N. College Ave, Suite 900
                               Tyler, TX 75702

18
                               Lai L. Yip, Esq.
19                             Sheppard, Mullin, Richter
                                 & Hampton LLP
20                             Four Embarcadero Ctr, 17th Floor
                               San Francisco, CA 94111

21
                               Martin R. Bader, Esq.
22                             Sheppard, Mullin, Richter
                                 & Hampton LLP
23                             12275 El Camino Re al Suite 200
                               San Diego, CA 92130

24

25

1    Court Reporter:                Kristie M. Davis
                                    United States District Court
2                                   PO Box 20994
                                    Waco, Texas 76702-0994
3

4

5         Proceedings recorded by mechanical stenography, transcript

6    produced by computer-aided transcription.

1   (May 30, 2019, 10:31 a.m.)

2       DEPUTY CLERK:  Pending motion hearing in Civil Action

3   W-18-CV-339, styled American Patents, LLC vs. Mediatek,

4   Incorporated, et al.

5       THE COURT:  Good morning.  If counsel would do two things.

6   If you would introduce everyone who is in attendance, and if

7   you also would be kind enough as to tell me who the folks are

8   that will primarily be speaking as well.

9       MR. DAVIS:  Good morning, Your Honor.  Stafford Davis on

10  behalf of plaintiff American Patents, LLC.  With me are Zack

11  Harrington and Larry Thompson, and they will both be speaking

12  on behalf of plaintiff.

13      THE COURT:  Very good.

14      MR. FINDLAY:  Good morning, Your Honor.  Eric Findlay,

15  along with Martin Bader and Lai Yip on behalf of Lenovo

16  defendants, and Mr. Bader will be handling customer suit sever

17  and stay motion, and Ms. Yip will be handling the

18  jurisdictional issues.

19      THE COURT:  Very good.

20      MR. FINDLAY:  Thank you.

21      THE COURT:  And since these are the defendants' motions,

22  I'll hear from the defendant first.

23      And you're welcome to come up.

24      Just so everyone knows, I have read -- you're welcome to

25  repeat anything or say anything you think is important, but I

1    have both read everything that you submitted and I have some

2    understanding of generally what it is you're -- obviously what

3    you're talking about without needing to go too much into the

4    background.

5        MS. YIP:  Thank you, Your Honor.  I took the liberty of

6    preparing some demonstratives for your reference.  May I

7    approach?

8        THE COURT:  Absolutely.

9        MS. YIP:  Good morning, Your Honor.

10       The Court issues in this case really boil down to this:

11   Plaintiff sued the wrong entities.  They sued two foreign

12   companies which do not place the accused products into the

13   stream of commerce either in Texas or anywhere else in the

14   U.S., and, meanwhile, the company that does place the accused

15   products into the stream of commerce, Lenovo U.S., is not a

16   foreign entity, is located in North Carolina and is unnamed.

17       THE COURT:  So is it your position that if they were to

18   substitute in Lenovo U.S., Lenovo U.S. would not have the

19   ability to argue that they didn't -- forgetting whether it

20   should be here in Waco or not.  I'm not talking about that, but

21   you're saying -- and obviously you're not saying Lenovo U.S. is

22   infringing.  I'm just saying -- but your position is that the

23   two Lenovo entities that were sued by the plaintiff should be

24   dismissed, they're not the correct entities, and the Lenovo

25   U.S. is the correct entity?

1          MS. YIP:  Correct.  Yes.

2          THE COURT:  Very good.

3          MS. YIP:  That is our position.  And, yes.  We reserve the

4     right to challenge venue, but the Lenovo U.S. entity would be

5     the correct entity here in this case.

6          THE COURT:  Okay.

7          MS. YIP:  So Lenovo U.S. operates independently, and it is

8     neither directed nor controlled by the foreign Lenovo entities

9     with respect to the accused products.  Lenovo U.S.'s chief

10    financial officer, Kurt Cranor, provided extensive testimony on

11    all of this.  Plaintiff demanded the deposition of Mr. Cranor

12    multiple times and received it, and after a full day of

13    questioning Mr. Cranor, plaintiff is still unable to present

14    evidence that would establish jurisdiction under any theory,

15    whether it's a stream of commerce theory or an agency theory,

16    and under any burden, whether it's a prima facie burden or a

17    preponderance burden.

18         THE COURT:  Can I ask you a completely irrelevant

19    question?  We have two interns here.  And I was thinking

20    yesterday when they were watching lawyers that they would do

21    much better by getting to sit up here or over there and watch

22    you all do your arguments than sitting back there because

23    you're obviously very competent counsel, and I'm looking

24    forward to hearing from the plaintiff as well.  Would you mind

25    if they sat up here and watched from this vantage point?

1      MS. YIP:  That would be absolutely fine.

2      THE COURT:  Why don't you guys come up here?  This is a

3  much better place to listen to good lawyers from.

4      MR. FINDLAY:  Your Honor, might we -- they might enjoy a

5  copy of the slides.

6      THE COURT:  There you go.  Please.

7      I'm sorry to interrupt you with that.

8      MS. YIP:  Oh, no problem at all.  Thank you, Your Honor.

9      So turning first to the burden issue.

10     THE COURT:  Okay.

11     MS. YIP:  So we really believe that this dispute over

12 which burden applies is immaterial here because under any

13 burden, the plaintiff fails.  The correct burden is the

14 preponderance burden because there is no material dispute of

15 fact, which we will show as we walk through the evidence.

16     Turning to the prima facie burden.  Under a prima facie

17 burden, uncontroverted allegations are accepted as true, but

18 here the Lenovo defendants have controverted every allegation.

19     So, now, with respect to factual disputes, although

20 factual disputes are resolved in the light most favorable to

21 the plaintiff, here, because plaintiff's evidence is so weak,

22 immaterial, irrelevant or nonexistent even in the light most

23 favorable to plaintiff, the Lenovo defendants should prevail.

24     Turning now to the stream of commerce issue.  The seminal

25 case here is the Asahi decision from 1987 issued by the U.S.

1    Supreme Court.  I went back and I reviewed every Federal

2    Circuit decision that applied the Asahi test since that

3    decision was issued in 1987.  The first was issued in 1994, the

4    Beverly Hills Fan case, and the last was 2016, the Polar

5    Electro case.  There were 11 decisions in all.

6          In six of those cases the Federal Circuit found no

7    jurisdiction over the foreign defendants.  In four of those

8    cases the Federal Circuit found jurisdiction but in

9    circumstances that are inapplicable here.  And if you look at

10   those decisions, what you see is a pattern emerge.

11         The foreign defendants in those cases all did activities

12   like manufacture, distribution, sales, shipping.  The Lenovo

13   defendants don't do any of that here.

14         THE COURT:  And the name of the -- I'm just trying to make

15   sure our record stays here.  We're going to exclude Lenovo U.S.

16   The Lenovo defendants we're talking about here are just the

17   ones that are named in this case?

18         MS. YIP:  Yes.  That's correct.

19         THE COURT:  I get that.  I just want to make sure the

20   record is clear since we have more than just those Lenovo

21   entities.  I want to make sure that that's what we're talking

22   about, but I get it.

23         MS. YIP:  Yes.  Thank you.

24         So in the slides we list out all 11 cases for Your Honor's

25   reference.  I won't go through all of them here.  Cases 1

1   through 6 are the ones in which the Federal Circuit found no

2   jurisdiction.  Cases 7 through 10 are the ones in which the

3   Federal Circuit did find jurisdiction in circumstances that

4   don't apply here, and in the eleventh decision, the

5   Commissariat case in 2005, the Court found that it needed more

6   jurisdictional facts in order to make a determination and that

7   the lower court should have granted jurisdictional discovery

8   and remanded on that basis, but here obviously --

9        THE COURT:  Which case was that?

10       MS. YIP:  The Commissariat case in 2005, which is Case No.

11   11 in the slides.

12       THE COURT:  Okay.

13       MS. YIP:  On Page 20.

14       THE COURT:  Yes, ma'am.

15       MS. YIP:  And so in that case the Court -- the Federal

16   Circuit remanded for jurisdictional discovery, but here

17   jurisdictional discovery has already taken place.

18       Turning now to the application of the stream of commerce

19   test.  When you look at the evidence that the Lenovo

20   defendants -- the foreign Lenovo defendants have put forth, it

21   becomes abundantly clear that the Lenovo defendants do not do

22   any of the things that the Federal Circuit has found are

23   necessary in order to find jurisdiction under a stream of

24   commerce theory.

25       Turning to Slide 22, Mr. Cranor was asked by plaintiff's

1    counsel directly whether or not the Lenovo defendants

2    manufacture the accused products.  And Mr. Cranor testified

3    under oath that they do not.

4        If you look at plaintiff's rebuttal evidence starting on

5    Page 23, what you see is that here, and actually throughout

6    their opposition briefing, they rely heavily on the foreign

7    Lenovo defendants' annual report.  And not only that, the

8    statements that they rely on are very generic.

9        It's worth mentioning as a threshold matter that it is

10   well established that in the jurisdictional context statements

11   in annual reports, SEC filings and the like are extremely weak

12   evidence of jurisdiction.  And that has been affirmed over and

13   over again at many district courts and in the regional circuits

14   as well.

15       Turning to Slide 24, the next piece of rebuttal evidence

16   by plaintiff, plaintiff points to evidence from Mr. Cranor

17   stating that there is a ████████████████████████████████████

18   ████████████████.  This doesn't show which ████████████████████

19   █████████████████████████████████████████████████████████████.

20   Plaintiff also points to some testimony that ████████████████

21   ████████████████████████████████████, but there are at

22   least nine Hong Kong entities that are part of the Lenovo group

23   of companies.

24       Turning now to shipment.  Mr. Cranor testified at

25   deposition in response to plaintiff's counsel's questioning

1   that the Lenovo defendants do not ship accused products to the

2   U.S.  He was unequivocal in this regard.  In response --

3        THE COURT:  Wait.  Just give me one second.  I just want

4   to -- okay.  I just wanted to read it.  Thank you.

5        MS. YIP:  Sure.

6        In response, plaintiff's rebuttal evidence is third party

7   data from a company called Import Genius that purportedly

8   identifies Lenovo Shanghai but does not identify accused

9   products.  This data was attached to the plaintiff's opposition

10  briefing.  It's about seven, eight, nine pages, and if you look

11  through every page, there are no accused products identified.

12       The plaintiff does not present any shipment evidence with

13  respect to LGL, Lenovo Group Limited, the other foreign

14  defendant, the other foreign Lenovo defendant.

15       Turning next to shipment.  Slide 27, the Lenovo defendants

16  do not import the accused products into the U.S.  Mr. Cranor

17  provided copious testimony on this point.  In his declaration

18  he declared under oath that the Lenovo defendants do not import

19  or ship the accused products into the United States, and he was

20  questioned about this again at deposition and he said, again,

21  from an importation perspective, Lenovo United States -- Lenovo

22  United States imports the product.  We're listed as the

23  importer of record.  The plaintiff has provided no rebuttal

24  evidence in this regard.

25       THE COURT:  I don't know what that means, we're listed as

1    the importer of record.  I don't know what that means.

2         MS. YIP:  So, all importation has an importer.  All

3    importation activities require an importer of record.  And so

4    in this case Lenovo U.S. is the importer of record.  There may

5    be a --

6         THE COURT:  I'm sorry.  I didn't mean to interrupt you.

7         Let me ask you this:  So I'm just making sure I follow

8    what Mr. Cranor said.  When he says, so whether -- and this is

9    on Slide 27.  So whether it came from -- regardless, I'll say

10   of where -- where it was shipped from, we're -- we're is

11   referring to Lenovo U.S.?

12        MS. YIP:  Correct.  Yes.  Lenovo U.S.  Thank you for the

13   question.

14        THE COURT:  Okay.

15        MS. YIP:  And, again, the plaintiff has presented no

16   rebuttal evidence that we have identified in response to this.

17        THE COURT:  Okay.

18        MS. YIP:  And ultimately from a big picture perspective,

19   Lenovo U.S. is the entity that does everything in the United

20   States with respect to the products.  Lenovo U.S. is an

21   independently operating entity that controls sourcing,

22   distribution, marketing, everything relating to presenting the

23   accused products to the market, to the United States market.

24        Turning now to the agency theory, which is the only other

25   theory that plaintiff has presented to the Court to assert

1    jurisdiction.   Turning to the standard is an important way to

2    start because it's important to remember that the standard for

3    finding agency in a jurisdiction context is extremely high.   It

4    is very difficult to show agency in order to find jurisdiction

5    over a foreign defendant.

6         The Eastern District of Texas issued a decision in 2016

7    that is instructive here.   This is the Fellowship Filtering

8    case which we cited in our briefing.   And in that case the

9    Court said:   For an agency relationship to permit imputation of

10   contacts, the parent company's control over the agent must

11   pervade the agent's dealing with the forum.   As a result, the

12   typical corporate relationship between a parent and subsidiary,

13   including 100 percent stock ownership and identity of directors

14   and officers, is not a sufficient basis to impute the contacts

15   of a third party to the defendant under an alter ego theory.

16        So here, even though the Court refers to alter ego, the

17   analysis in the whole decision is about agency.

18        Turning to Slide 32, the Court also said, even under a

19   theory of imputed contacts, the defendant must deliberately

20   engage in significant activities within a state in order for

21   exercise of personal jurisdiction to comport with due process.

22   And you see here that in both instances the Court is citing and

23   relying on regional circuit authority, including Federal

24   Circuit authority which is the Nuance case.

25        So if you look at the Fellowship case and the facts there,

1    you'll see a lot of parallels here in our case.  In that case

2    the parent company was Alibaba Group and the other entity was a

3    U.S. entity Alibaba.com, Inc.

4        And there the Court found the context of the parent

5    company should not be imputed to subsidiary and that the

6    evidence plaintiff relies on to support agency demonstrates

7    nothing more than a typical parent/subsidiary corporate

8    relationship.

9        So just some of the evidence that the Court found to be

10   insufficient to find personal jurisdiction:  A tax agreement

11   signed by the director of the parent on behalf of the

12   subsidiary; complete identity of officers and directors, even

13   coupled with other indicia of alter ego status is not a

14   sufficient basis to impute context of a third party to the

15   defendant; deposition testimony indicating that other entities

16   review certain decisions made by the subsidiary and SEC filings

17   indicating that various Alibaba entities have contractual

18   relationships enabling effective control over one another found

19   to be insufficient.

20       And the Court said, the fact that a parent company may

21   exercise some degree of control over its subsidiaries does not

22   demonstrate that the corporate forum should be disregarded for

23   purposes of personal jurisdiction.  Indeed, review of certain

24   budget requests or potential business partnerships pursuant to

25   a contractual agreement does not demonstrate parental control

1   that pervades the agent's dealings with Texas.

2       Statements made in SEC filings, also insufficient

3   evidence.  100 percent ownership of a subsidiary, insufficient

4   evidence.  Broad sweeping statements in various SEC filings

5   regarding close integration, insufficient evidence.  So all of

6   those facts echo the facts in our case or at least the facts

7   that plaintiff purports to rely on in asserting jurisdiction.

8       So plaintiff claims that Lenovo U.S. is the agent of

9   Lenovo Group Limited, LGL, which I'll abbreviate as LGL here.

10  The plaintiff makes no such argument as to Lenovo Shanghai.

11  Plaintiff has not asserted that Lenovo U.S. is the agent of

12  Lenovo Shanghai; however, plaintiff presents no evidence

13  showing that LGL's control over Lenovo U.S. pervades its

14  dealings with the forum either in Texas or any other forum.

15      Turning to Slide 37, plaintiff's counsel had ample

16  opportunity, a full day, to depose Mr. Cranor, and Mr. Cranor

17  testified over and over again that ████████████████████

18  ████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21      He testified: ████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ███████████████████████████████████.

1      And it's important here to remember that Mr. Cranor is not

2  just any Lenovo U.S. employee.  He is the chief financial

3  officer.  He has been at the company for 14 years, 14 years in

4  senior management or executive roles.  His knowledge of the

5  company and what it does in the United States is virtually

6  unparalleled at Lenovo U.S.

7      Turning now to the next piece of evidence for Lenovo

8  defendants' evidence.  On Slide 38, again, at this full day

9  deposition, Mr. Cranor testified that ███████████████████

10 ████████████████████████████████████████████████████████

11 ██████████.  He testified: ███████████████████████████████

12 ██████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ███████████████████████████████████.  And, in fact, it is

16 not.

17     Next, plaintiff's counsel asked numerous questions

18 regarding contractual ██████████████████████████████████

19 ██████████████████████████████████████████████████

20 ██████████████████████████████.

21     Plaintiff's counsel asked: ████████████████████████████

22 █████████████████████████?

23     Answer: ████████████████████████████.

24     █████████████████████████████████████████████████?

25     Answer: ████████████████████████████.

1    Question: ███████████████████████████████████

2    ████████████?

3    Answer: ████████████████████████.

4    Mr. Cranor repeatedly and consistently conveyed the

5    independence and autonomy of its company.

6    Plaintiff's counsel asked: ████████████████████████

7    ██████████████████████████████████████████?

8    His response: ████.

9    Question: ███████████████████████████████████████

10   ████████████████?

11   His answer: ████████████████████.

12   Mr. Cranor also at this full day deposition testified that

13   ████████████████████. He testified: ████████████████████

14   █████████████████████████████████████████████████

15   ██████████████████████████████████.

16   And plaintiff's counsel asked: ████████████████████████

17   ████████████████████████?

18   And Lenovo U.S.'s chief financial officer testified: ████

19   ████████████████.

20   Mr. Cranor also testified that ████████████████████████

21   ███████████████████████████████████████████

22   ███████████████████████████.

23   He was asked: ████████████████████████████████

24   █████████████████████████████████████████████

25   █████████████████? And he said ██████████████████.

1    He was also asked: ████████████████████████

2    ████████████████████████████████████████████?

3    And he said ██████.

4    So what we see here, again, is repeated consistent

5    testimony that ████████████████████████.

6    Now, turning to plaintiff's rebuttal testimony, what we

7    see here is testimony -- is rebuttal evidence.  Excuse me.

8    What we see here is evidence that is extremely weak, immaterial

9    and irrelevant.  It certainly does not show pervasive control

10   by LGL over Lenovo U.S. as is required to show jurisdiction

11   under an agency theory.  Plaintiff's evidence is that Lenovo

12   U.S. is a wholly owned subsidiary of LGL.

13   This was addressed in the Fellowship case, and there the

14   Court said, even 100 percent ownership of a subsidiary is not a

15   sufficient basis to disregard the corporate forum.  Plaintiff's

16   evidence, statements in the annual report purportedly showing

17   the group has control over subsidiaries.  And it's important

18   here to point out that especially in the briefing there has

19   been a lot of -- in the evidence that has been attached to the

20   briefing and in the briefing itself, there's been a lot of

21   reference to Lenovo Group and/or we or our with no context as

22   to which entities these actually refer to, and in fact, if you

23   look at the way Group is defined in the annual report that

24   plaintiff relies on so heavily, Group is not defined as Lenovo

25   Group Limited.  It's actually defined as the whole group of

1   companies.

2       In any event, these statements are immaterial as a matter

3   of law because the Fellowship case said, broad sweeping

4   statements made in various SEC filings indicating that in that

5   case the Alibaba entities are closely integrated do not counsel

6   in favor of disregarding the corporate forum.

7       Next, plaintiff's rebuttal evidence is that Lenovo U.S.

8   employees, specifically Mr. Zielinski, Mr. Skaugen and

9   Ms. Quatela, purportedly report up to officers of LGL, but this

10  is just completely immaterial and irrelevant because Mr. Cranor

11  already testified that ████████████████████████████████████████

12  ██████████████████████████████████████.

13      He also testified that ████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████ in response to

16  plaintiff's counsel's question at the deposition.

17      In the Fellowship case and a case that plaintiff's counsel

18  relies on, the PPA case out of the Western District of

19  Washington, both make clear that the facts here or the facts

20  that the plaintiff purports to rely on regarding reporting up

21  to officers of the parent are insufficient to show agency for

22  jurisdiction.

23      Next, plaintiff relies on a third party article published

24  be PricewaterhouseCoopers calling Lenovo U.S. a headquarters.

25  It's frankly difficult to understand how this is relevant at

1  all to the agency theory.  Being called a headquarters by a

2  third party does not show LGL's control over Lenovo U.S. and

3  certainly does not show pervasive control.

4      Next, plaintiff relies on Lenovo U.S.'s sales being

5  reported in the consolidated annual report.  The PPA case,

6  again, one that plaintiff itself relied on said:  Consolidation

7  of subsidiary's activities into parent company's reports is

8  insufficient to support agency -- support an agency

9  relationship.  We also cited a case, the Hildebrandt case in

10 our opening brief that defines the same thing.

11     Plaintiff also relies on some testimony regarding ▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and plaintiff claims that this shows

14 agency because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

15 This evidence is extremely weak and irrelevant and, frankly,

16 illogical.  It is really quite common for companies to make all

17 kinds of decisions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮.  It certainly does not show that ▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮.  And, in fact, the evidence

20 establishes that Lenovo U.S. is a very, very large operating

21 company with many thousands of employees.

22     Next, plaintiff relies on evidence that -- more of an

23 argument than evidence, that LGL, Lenovo U.S. and Lenovo

24 Shanghai are purportedly indistinguishable to consumers and,

25 therefore, consumers must be confused.

1        First, it's irrelevant as a matter of law because

2   consumers are simply buying an end product and have no reason

3   to distinguish between various corporate entities, and it

4   doesn't show pervasive control in any event.  And it's worth

5   noting that the British Telecomm's case which plaintiff

6   relies on -- actually plaintiff relies on this case really

7   extensively in its supplemental brief.  And the British

8   Telecomm's case, which is a case out of Delaware, it's not a

9   jurisdiction case.  It's a case about vicarious liability under

10  an agency theory.  And in any event, the plaintiff cites

11  British Telecomms for the proposition that consumer confusion

12  suggests an agency -- suggests an agency relationship, and, in

13  fact, the case doesn't say anything about that.

14       Plaintiff also relies on testimony from Mr. Cranor.  So at

15  the deposition plaintiff █████████████████████████████████████

16  █████████████████████████████████████████████████████████████

17  █████████████████████████████████████████████████

18  ████████████████████████████████████████.  Plaintiff

19  uses this testimony to argue that consumers must be confused

20  about the various Lenovo entities and are unable to distinguish

21  between them.

22       First of all, as I previously mentioned, plaintiff has

23  cited no case law that would suggest that consumer confusion

24  suggests agency.  Consumer confusion is a concept that is very

25  important in trademark law, but there is no authority here that

1    plaintiff has cited that would suggest that it's a material

2    consideration in the agency context.  And in any event,

3    Mr. Cranor saying ███████████████████████████████████

4    ██████████ does not show that any consumer is confused and in

5    fact doesn't even show that Mr. Cranor is confused.  And, most

6    importantly, it doesn't show pervasive control by LGL over

7    Lenovo U.S., which is the standard.

8         Next, plaintiff relies on the annual report again and its

9    references to we, our and us.  Plaintiff's argument is that

10   because the Lenovo entities refer to themselves collectively

11   that they must be agents of each other.  That appears to be the

12   argument that they are making, but, again, in the Fellowship

13   case the Court found that there is no jurisdiction on the basis

14   that Alibaba Group holds out its U.S. subsidiary as being part

15   of a tightly integrated Alibaba group.

16        So that is really the sum total of plaintiff's rebuttal

17   evidence.  And what we see here is that even under a prima

18   facie burden of proof, even in the light most favorable to

19   plaintiff, plaintiff is unable to establish jurisdiction.

20   Every single piece of plaintiff's evidence is either immaterial

21   as a matter of law, extremely weak, irrelevant or just don't

22   make any sense.

23        Turning now to the jurisdiction under Rule 4(k)(2).  So

24   this is plaintiff's catch-all jurisdictional theory that is

25   completely premised on the success of the other two theories.

1    Rule 4(k)(2) permits the assertion of the exercise of

2    jurisdiction where the minimum contacts of the foreign

3    defendant are sufficient with the United States as a whole even

4    if not with respect to any particular forum.  But, as we

5    showed, plaintiff is unable to show minimum contacts under

6    either stream of commerce theory or an agency theory in any

7    forum anywhere in the U.S. and, therefore, it cannot be that

8    there are minimum contacts with the U.S. as a whole.

9        And, finally, with respect to whether or not the exercise

10   of jurisdiction is unreasonable or unfair, the Federal Circuit

11   has said that showing that the exercise of jurisdiction is

12   unreasonable or unfair only shifts to the defendant if the

13   plaintiff shows first that there are minimum contacts by the

14   foreign defendant in the forum.  And here, because the

15   plaintiff has never made the showing, the burden never shifts

16   to the defendants.  If the burden were to shift to defendants,

17   certainly the exercise of jurisdiction would be unreasonable

18   and unfair given that the foreign defendants are not operating

19   in the U.S., operate thousands of miles away, and there is

20   another entity, Lenovo U.S., which would be the correct

21   defendant here.

22       And if the Lenovo defendants were dismissed and our motion

23   were to be granted, it is very important to remember that the

24   plaintiff would not be without a remedy.  The plaintiff could

25   still name Lenovo U.S.  In many of the cases in which motions

1    to dismiss are granted, there are not even other entities for

2    the plaintiff to name.  The plaintiff is left with no one to

3    sue, but here that's not true.  The plaintiff has a remedy.

4         Your Honor, if there's any questions that you have that I

5    can answer, I would be happy to answer them.

6         THE COURT:  No.  I think that was a very good

7    presentation.

8         MS. YIP:  Thank you, Your Honor.

9         THE COURT:  Very good.  Thank you, ma'am.  And I'll give

10   you a chance after plaintiff's counsel is done to come back up.

11        MS. YIP:  Thank you.

12        MR. THOMPSON:  Your Honor, may I approach with copies of

13   my presentation?

14        THE COURT:  Of course.

15        MR. THOMPSON:  Again, Larry Thompson, Your Honor, for

16   plaintiff.

17        THE COURT:  Yes, sir.

18        MR. THOMPSON:  There's one point that I want to address,

19   you know, right off the bat before I get into our presentation.

20   Lenovo's counsel made quite clear their opinion that Lenovo

21   U.S. is the only proper party in this case, but Lenovo U.S.

22   doesn't make the accused products.  They don't ship the accused

23   products to the United States.  And Lenovo doesn't want to tell

24   us or the Court who actually does that.  And that's important

25   here because what we do know and what's beyond reasonable

1  dispute here is that a foreign Lenovo company makes the accused

2  products, distributes the accused products to the U.S., sells

3  the accused products to Lenovo U.S., which ████████████

4  ██████████████████████████████████████████████████████████

5  ████████████████████████████████████, and then Lenovo U.S. then

6  sells those accused products to retailers and customers

7  nationwide, including in Texas.

8       THE COURT:  Did you ask Mr. Cranor that question, ████

9  ████████████?

10      MR. THOMPSON:  Yes.  He said ████████████████████████████

11  ████████████████████████████████████, but that was

12  based solely off the investigation that Lenovo counsel

13  performed and reported to him.  And we were not able to

14  actually even inquire to the details of that investigation

15  based on objections of privilege at the deposition.

16      THE COURT:  Okay.  And is your position here today that

17  you want to be able to take discovery to find that out?

18      MR. THOMPSON:  Your Honor, I think we only need additional

19  discovery if we are unable to convince the Court that we've

20  carried our burden, and I think we have carried our burden on

21  this record right now.

22      THE COURT:  Okay.

23      MR. THOMPSON:  But I think at the very minimum there are

24  factual issues that certainly could be answered in discovery.

25  Right?  You know, the contract between Lenovo U.S. and the

1   person they buy the products from, the actual information on

2   which Lenovo company makes the accused products.  I mean, there

3   are all sorts of things that could be answered very readily in

4   discovery, but under the prima facie standard, we're entitled

5   to get the benefit of all inferences from the current evidence.

6   So even if it's not crystal clear or certain that the

7   defendants are the people involved in this behavior, so long as

8   the Court can infer from the evidence that they likely are,

9   then that's enough for us to win right now.

10       THE COURT:  Okay.

11       MR. THOMPSON:  And so, again, going through what I was

12  saying earlier, we know that a foreign Lenovo defendant is --

13  I'm sorry -- a foreign Lenovo company is engaged in all the key

14  activities overseas.  All that we don't know, all that we're

15  not 100 percent certain on is whether it's the defendants or

16  some other foreign Lenovo company that Lenovo Group controls.

17       The best and most reasonable inference to take from the

18  current record is that Lenovo Shanghai and Lenovo Group are the

19  companies who make the accused products overseas, who

20  distribute the products to the U.S., who sell the accused

21  products to their ███████████████ in the U.S. and who oversee

22  and supervise the distribution of those products to retailers

23  and customers.

24       THE COURT:  I am curious why when Lenovo is telling you

25  that you can sue another Lenovo entity, why you would be

1   uninterested in doing that.

2        MR. THOMPSON:  Your Honor, we're not uninterested in suing

3   Lenovo U.S., but we do have a case involving several other

4   defendants on the same technology for you in this Court.

5        THE COURT:  Right.

6        MR. THOMPSON:  And Lenovo U.S. very likely will have a

7   defense under the TC Heartland for improper venue, and, you

8   know, Ms. Yip reserved that.

9        THE COURT:  Right.

10       MR. THOMPSON:  And so the question about going after

11  Lenovo U.S. is that we would not potentially be able to do it

12  in this Court.

13       THE COURT:  I get that.

14       MR. THOMPSON:  Which would, you know, worsen judicial

15  economy, obviously be more expensive for us, and so -- and I

16  think, more importantly, we learned from the Cranor deposition

17  that ███████████████████████████████████████████████

18  ███████████████████████████████████████████.  I

19  mean, Mr. Cranor ███████████████████████████████████

20  █████████████████████████████████████████████████████

21  ██████████████████████████.  And so there's all sorts of

22  information here that Lenovo Group, Lenovo Shanghai are in a

23  much better position to provide than Lenovo U.S. is.

24       THE REPORTER:  Counsel, I need you to slow down.

25       MR. THOMPSON:  I'm sorry.  Thank you.

1    So the facts that can be inferred from the current record

2    are easily enough to support jurisdiction.

3    Now, if we were actually wrong about defendants and they

4    didn't actually engage in the activity that we believe they do,

5    I mean, it would have been the easiest thing in the world for

6    them to come forward with actual evidence, with documents and

7    from witnesses from their affiliates who actually do these

8    activities.  They have not done so and their failure to do so

9    speaks volumes.  And Your Honor's entitled to infer from that

10   refusal that the evidence they're not providing would have been

11   harmful and would have helped us carry our burden.

12   In addition, Lenovo hasn't directly controverted our

13   allegations or evidence about foreign activities with any

14   competent evidence.  I mean, the only evidence they provided --

15   well, actually with the original briefing and the original

16   declarations, Mr. Cranor said nothing about what the defendants

17   do overseas, which is, you know, obviously the key activity for

18   the stream of commerce theory.  Only in the deposition did he

19   ███████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████

23   ██████████████████████.  And we cited cases, Your Honor, to show

24   that that cannot be used to refute our allegations or evidence

25   in this proceeding.

1        So then beyond that, you know, Lenovo spends I think most

2   of its argument trying to point out that the evidence we're

3   relying on is circumstantial, but they don't make any argument

4   or provide any proof as to why the inferences we're drawing are

5   unreasonable.  Right?  I mean, they could do that.  I mean,

6   they could find some evidence that, you know, Lenovo Group has

7   no manufacturing capabilities or that someone else actually

8   does it, but they haven't done that.  And in light of what we

9   have, those inferences are perfectly reasonable and in fact are

10  the most reasonable inferences.

11       So, you know, Lenovo's motion to dismiss should be denied

12  on this record at this stage.  Lenovo cannot win on the law,

13  and they should not win as a matter of policy.

14       So I'd like to turn to Slide 2, Your Honor.  And so,

15  again, we have three theories of jurisdiction that we presented

16  in the papers, direct contacts with the forum, stream of

17  commerce contacts and agency based contacts.  For the

18  presentation I'll be focussing on direct and stream of commerce

19  contacts for Lenovo Shanghai and stream of commerce and agency

20  contacts for Lenovo Group.

21       So the next slides go into the burden and standard of

22  proof.  It appears that Lenovo has conceded that the prima

23  facie standard is the appropriate one here so I'll skip over

24  that for now.

25       So I think as a threshold issue, it's important to look at

1    4(k)(2) because 4(k)(2) is set up -- this is Slide 20, Your

2    Honor.  Rule 4(k)(2) is set up to make sure that foreign

3    defendants are not able to escape jurisdiction in the U.S. in a

4    U.S. federal court when they do have minimum contact with the

5    U.S.  And so here Lenovo has been served and Lenovo has refused

6    to identify any other forum in the U.S. where they could be

7    sued in this case.  And that means that we now for this case

8    can consider all contacts with the U.S. and not just contacts

9    with Texas.  I think that's very important to realize,

10   especially when it comes to Lenovo Shanghai.  And this is Slide

11   22.

12       So Lenovo Shanghai obtained certifications that were

13   necessary to sell the accused products in the U.S.  They

14   obtained the SEC certification and they obtained certifications

15   from Underwriters Laboratories that are U.S. specific, and

16   without these, the accused products could not be sold in this

17   country.

18       Lenovo's only argument against that evidence is that it

19   doesn't show a tie to Texas, but again, under 4(k)(2), it

20   doesn't have to.  All it has to do is show ties to the U.S. and

21   certainly it's sufficient in context for the U.S. as a whole.

22       Now, looking at -- so that's a direct case for Lenovo

23   Shanghai.

24       On Page 23 we talk about the stream of commerce test.  And

25   it's a very simple test.  You asked if the defendants' products

1   are being sold to a nationwide distribution network and because

2   of that are available in the forum.  The second and third

3   elements here are really, I think, beyond dispute.  What's

4   really going on here is Lenovo is saying that the accused

5   products are not really their products.  Right?  And at a broad

6   level this is Lenovo trying to have it both ways.  I mean, when

7   they talk to investors, they include the revenues and profits

8   from these products in order to make their stock more valuable,

9   but now that they're in court, they deny any role in these

10  products in terms of making them, distributing them or

11  designing them.

12      And going to some of the actual acts relevant to this

13  theory, the evidence does show that the defendants make the

14  accused products.  So this is on Page 25.  It kind of

15  summarizes some of the major points.  Lenovo's Group annual

16  report states that Lenovo manufactures products.  It has global

17  manufacturing operations and actually owns manufacturing

18  facilities.

19      And Page 26 has another piece of evidence on that ground.

20  Lenovo manufactures one of the world's widest portfolio

21  connected products.  Now, Lenovo has said, well, statements

22  like this are not, you know, narrow enough because that could

23  be any Lenovo company.  Well, if we turn to the next slide,

24  Slide 27, this is the statement from the report that says,

25  Lenovo has company owned manufacturing capabilities.  And so

1    there's no doubt they define company in the report as Lenovo

2    Group Limited.  So Lenovo Group Limited, really is the only

3    defendant in this case that actually has -- sorry -- the only

4    foreign Lenovo company that's been identified in the record

5    with any manufacturing capabilities.

6         Mr. Cranor on Slide 28 admitted that ████████████████

7    ██████████████████████.

8         On Slide 29 he admitted that ██████████████████████████

9    ████████████████████████████████████████████████████████

10   ██████, which, again, I think counsel said that Mr. Cranor had

11   unparalleled knowledge, but he's been at Lenovo 14 years and

12   ████████████████████████████████████████████.  So I

13   don't think his knowledge is unparalleled.

14        But what's important here is that he did say that ██████

15   █████████████████████████████████████████████.

16   Well, the record shows that Lenovo Group is a Lenovo company in

17   Hong Kong.  That's in Slide 30.  I'm sorry.  Slide 31, Your

18   Honor.

19        He also acknowledged based off the ██████████████████████

20   ████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ██████████.  And what's part of the dispute here has been the

23   records don't list model numbers.  They list different types of

24   computer products, you know, desktops, monitors.  The dispute's

25   over whether they say tablets or not, but we don't have that

1    evidence right now.  I mean, Lenovo does, but we haven't had an

2    opportunity to test that.  But the inference certainly is, if

3    Lenovo Shanghai is regularly shipping computer products to the

4    U.S. and they're also certifying products for sale in the U.S.

5    that the products they're shipping are likely the products

6    they're certifying.  And so I think that's additional evidence

7    of Shanghai's role in shipping products to the U.S.

8        And even beyond the sort of tablet issue, which are the

9    exemplary products in the complaint, the accused products here

10   have not been duly defined.  We haven't served our picks yet,

11   and, in fact, one of the products that we've identified is an

12   actual monitor/desktop.  It's an all-in-one computer.  This is

13   on Slide 35.  And there's no reason to think that this wouldn't

14   be covered by one of the categories of imports on the Shanghai

15   records.

16       So another part of the --

17       THE COURT:  So with respect to the accused product you

18   show on Slide 35, what is the evidence that this is

19   manufactured or sold by one of the Lenovo defendants?

20       MR. THOMPSON:  So, Your Honor, my argument is different

21   here.  My argument is that this is a product that has

22   infringing capabilities.

23       THE COURT:  Okay.

24       MR. THOMPSON:  And that we know that Lenovo Shanghai has

25   records where they're shipping in computer products, including

33

1    desktops and monitors like this, and it's fair to infer that

2    the products being shipped in are -- the unknown or unspecified

3    products being shipped by Lenovo Shanghai include products like

4    this that also infringe.  But, again, you know, we haven't had

5    any chance for documentary discovery, and certainly there could

6    be some additional information from Lenovo that might -- that

7    might shed light on that, but, again, Lenovo has not provided

8    anything itself to show that someone else is shipping this

9    product.

10        So, again, going to the established distribution network,

11   it's clear from the record that the Lenovo defendants are part

12   of a distribution network that's designed to access a U.S.

13   market.  Again, Mr. Cranor admitted that ▇▇▇▇▇▇▇▇▇▇▇▇

14   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

15   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and Slide 37 has two of the most

16   useful excerpts on that point.  For example, the question was:

17   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

18   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇?

19        The answer:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

20   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

21   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

22        And that is not only evidence of an established

23   distribution network, but it's also, I think, you know,

24   categorically what you would expect from an agency

25   relationship.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1 ████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████.

4      So on Slide 38 we have some testimony that confirms also

5 that ████████████████████████████████████████████

6 ██████████████████████████████.

7      And on Slide 39 we have testimony showing that the ████████

8 █████████████████████████████████████████████

9 ██████.

10     And then finally we have evidence on Slide 40 from the

11 briefing of the accused products are available for sale

12 nationwide and in Texas.

13     So, Your Honor, I think there is really no dispute that

14 the stream of commerce theory supports either defendant.

15     Your Honor, do you have any questions on that theory so

16 far?

17     THE COURT:  I'm good.

18     MR. THOMPSON:  Okay.  So turning to the agency theory --

19     Well, there actually is one thing I wanted to discuss,

20 Your Honor.  I mentioned earlier how Lenovo's only evidence

21 that controverts our allegations in evidence are the hearsay

22 based statements of Mr. Cranor.  And on Slide 46 we, you know,

23 go through some of the cases that show that they're not able to

24 use that sort of evidence, you know, to defeat our

25 jurisdictional motion.

1          Now, one of the arguments that Lenovo made in its brief is

2     that somehow Mr. Cranor is different because he was a 30(b)(6)

3     witness, and they cite to a Fifth Circuit case in which the

4     Circuit allowed testimony at trial from someone who was a

5     30(b)(6) witness in areas outside of his personal knowledge

6     because those are areas that he testified to in deposition.

7     Well, that case was the case in which the plaintiff or the

8     other party was attempting to cross-examine at trial the

9     30(b)(6) witness.  And so it was an adverse party that was

10    using that testimony.  The Circuit has made clear though that

11    the -- you know, the party that's propounding the actual

12    witness and who put the witness up for a deposition cannot use

13    his testimony for their own purposes if it's based on hearsay.

14    And that's what Mr. Cranor's testimony is based on, and there's

15    no dispute about that.

16         So that was on Slide 52.

17         Now --

18         THE COURT:  Well, let me parse that down a bit.  Was the

19    evidence that you're saying he relied on the information that

20    he went out and had got from other Lenovo people to make sure

21    the information was correct, or is this information that you

22    say was provided to him by counsel and counsel said, we're not

23    going to let you get into where the information came from?

24         MR. THOMPSON:  So, Your Honor, the question at the

25    deposition confirmed that Mr. Cranor ███████████████████

1   ██████████████████████████████████████████

2   ███████████████████████████████████████████████

3   ██████████████████████████████████████████

4   ███████████████████████████████████████████████

5   ████████████████████████████. So those are even

6   potentially more flawed.

7       But again Lenovo has the ability to find someone who

8   actually has personal knowledge of this stuff and to put them

9   in or to have Mr. Cranor at least testify about a conversation

10  he had with someone who had personal knowledge or a document

11  that would show what they needed to, and they haven't done that

12  here.

13      THE REPORTER:  Counsel, you need to slow down.

14      MR. THOMPSON:  Okay.  Thank you.  Sorry.

15      I think that's important here for -- and given the burden

16  of proof of the prima facie case and how low that is.  It's

17  really -- a reason why the burden is so favorable is that it's

18  meant to deal with situations in which they have the evidence

19  and we don't.  And that's true here.  Even despite the single

20  deposition that we've had, we have no access to their

21  confidential internal documents, and we have to take their word

22  for it, but we've still been able to, based off public

23  discovery, find documents that make it reasonable to think that

24  they're actually involved in the stream of commerce for the

25  accused products.

1    So, Your Honor, turning to Page 53, we discuss the general

2    tests for agency based jurisdiction, and this is appropriate

3    whenever a corporate parent or affiliate directs or authorizes

4    a subsidiary's jurisdiction conferring acts.  Now, this is not

5    an alter ego analysis, and it's not an exercise of jurisdiction

6    based solely on the parent subsidiary relationship.

7    And at this point I want to talk about this Fellowship

8    Filtering case that Lenovo cites.  And it's clear from the

9    language that the Court applied in that case that they're

10   actually applying alter ego standards to this fact pattern, but

11   maybe even more important for the current factors was that that

12   decision was only made after an evidentiary hearing with live

13   testimony.  So the Court may have after, you know, hearing

14   testimony come to different conclusions about what the evidence

15   shows, but on this record, with the prima facie standard, those

16   inferences cannot be drawn against us.

17   So on Page 54 we have a statement from the Supreme Court

18   in Daimler where it talks about how a corporation can, you

19   know, avail itself of a forum by directing its agents or

20   distributors to take action there.  And an example given is

21   marketing a product through a distributor who has agreed to

22   serve as a sales agent in the forum.

23   We also on Slide 55 have an excerpt from the British

24   Telecomm case with Circuit Judge Bryson writing on this where

25   he says:  The agency theory differs in scope and application

1    from the alter ego theory.  Under the agency theory, total

2    domination or general alter ego criteria need not be proven.

3    Rather, a parent corporation is held liable for the actions of

4    a subsidiary if the parent directed or authorized those

5    actions.

6        That's the test.  It's not a pervasive theory.  It's not a

7    disregarding the corporate forum theory.

8        On Slide 56 and 57, Your Honor, we list several of the

9    factors that we are applying to show agency, and we list the

10   cases that support that.  Without marching through each of

11   these individually, I will comment that Lenovo's strategy

12   largely is to sort of look at these factors individually, find

13   the case in which that factor was not enough to put you over

14   the line of agency and then say the factor is irrelevant here.

15   And here the argument is that all these factors when combined

16   show direction or control.

17       I'd like to turn to Slide 67, Your Honor, is where we talk

18   about the headquarters in the United States of Lenovo, and, you

19   know, one of the documents that we did cite for this

20   headquarters point was a third party document, but it was based

21   off interviewing Lenovo executives, but even beyond that, this

22   Exhibit CC at the bottom here is from a Lenovo Group press

23   release.  So there's independent evidence of them announcing

24   the headquarters status of Lenovo U.S.'s facilities, which,

25   again, I think shows a very direct and very unusual connection

1    between the parent company and the subsidiary here.

2         So I'd like to also turn to Slide 70 now, Your Honor, and

3    this is some testimony about the manner ████████████████████

4    ████████████████, and this was some testimony that Lenovo's

5    counsel mentioned earlier, but one part of this testimony that

6    was not mentioned is here on Line 20 and 21 here.

7         The question was:  █████████████████████████████████

8    ██████████████████████████████████████████████████████.

9         And the witness answered, ████████.

10        So, again, the ██████████ is I think a very clear example of

11   directing or authorizing that activity.

12        Slides 71 and 72 talk about the common branding causing

13   consumer confusion, and this is actually a relevant factor that

14   courts have recognized for agency and for stream of commerce

15   for that manner, and I think the general idea is is that when

16   you're dealing with the public in a way that deliberately

17   prevents the public from knowing which of a corporate family

18   they're actually acting with, then it's fair to say that

19   everyone who potentially is in that relationship is purposely

20   availing themselves of the forum because otherwise it gives the

21   defendant a way to sort of take -- to have the benefit of, you

22   know, doing business in the forum without having to be sued for

23   the consequences of its business.  Right?  And we have examples

24   here of Mr. Cranor being shown █████████████████████████████

25   ████████████████████████████████████████████████████████

1   ███████████████████████████████████████████.

2        THE COURT:  Let me ask you this, and you don't have to

3   tell me.  I mean that because I don't mean to -- if it's

4   something you don't want to tell me, I would understand why,

5   but how is it that you all decided to sue the two Lenovo

6   entities that you -- how did you select them?  And if you don't

7   want to tell me, you don't have to because it's --

8        MR. THOMPSON:  At a high level, I think I can point out

9   that Lenovo Group is clearly the entity in charge of the entire

10  Lenovo organization, and Lenovo is an interesting company where

11  probably more than almost anyone that I've dealt with, they

12  have layers and layers of entities that are involved in ways

13  that are completely opaque from the outside, but based off what

14  we've seen, Lenovo Group is the one who controls everything.

15  So that's why Lenovo Group is in the case.

16       And Lenovo Shanghai, you know, we found them on the

17  certifications of the accused products that we have in the

18  complaint.  And so we felt that that clearly showed that they

19  had a role in the case here.

20       THE COURT:  Okay.

21       MR. THOMPSON:  I would want to end with a discussion about

22  the Court's options if the Court does not actually deny the

23  motion today.  I mean, there's discussions starting on Page 79

24  where we talk about, you know, the general standard for

25  jurisdictional discovery and their cases that have ordered more

1    jurisdictional discovery even when it's been had.  It all

2    depends on whether there's any reason to think that discovery

3    will lead to more information relevant to a personal

4    jurisdiction.  I think here the record is abundant with

5    situations in which discovery can answer questions that are

6    important here.

7        And, finally, on Page -- yes.  So on Page 83 and 84 we

8    have discussion of the Court's ability to, you know, defer this

9    issue until later in the case.  It may well be that additional

10   jurisdictional discovery could be taken with discovery on other

11   issues in the case, and on Page 84 we've got some discussion of

12   how the Court has the issue to defer this until trial, which

13   may be helpful as well because there are a lot of issues on

14   agency that are going to overlap with our underlying liability

15   theories on infringement, you know, to which we have a right to

16   trial by jury.

17       So unless Your Honor has any questions, I'll sit down.

18       THE COURT:  I don't.

19       MR. THOMPSON:  All right.  Thank you.

20       THE COURT:  Counsel, I'm sure you have a couple of things

21   you're eager to respond to, and if you're like me, you want to

22   get them all done before you forget what it was you were about

23   to say, but I'm going to screw you up by asking you something I

24   want to know, and then hopefully you'll be able to get there.

25   I'm going to let you say whatever you want, but what counsel

1    for plaintiff just said actually was kind of what I was

2    thinking might be the most appropriate thing here.  A number of

3    times he said that, you know, the problem he has, which on one

4    level I'm sympathetic to, you know, in being able to get the

5    appropriate information from the Lenovo entities to make sure

6    they are suing the right people.  They start off at some

7    disadvantage in that regard.  I get that.  That's why I asked

8    why they selected the ones they selected.

9        What would be wrong with allowing them, allowing the

10   plaintiff to have some additional discovery that I would want

11   you all to work out and get approved by me in terms of its

12   scope to give the plaintiff an opportunity to get the

13   information it needed to respond to this motion before I ruled?

14   That is a -- that's probably where I'm leaning at the moment,

15   and I'll let you address that.

16       MS. YIP:  Sure.

17       THE COURT:  By the way, your presentation was very good,

18   and, you know, very persuasive, you know, but my goal is to

19   make sure that while your offer to let them sue Lenovo U.S. is

20   generous, I understand why they might not want to do that

21   unless they have the wrong entities here, and so I'm tempted to

22   allow them to do some discovery in that regard.  So if you

23   would address that, and then I'm happy to hear from you on

24   anything else.

25       MS. YIP:  Thank you very much, Your Honor, for the

1    opportunity to speak again and for your question.

2         I had anticipated that they would raise the jurisdiction

3    issue, the additional jurisdictional discovery issue and so I

4    prepared some additional demonstratives for your reference on

5    this point if you would not mind me approaching and providing

6    it.

7         THE COURT:  Very impressive.

8         (Laughter.)

9         MS. YIP:  So there's actually a standard for how we

10   evaluate whether jurisdictional discovery is appropriate.

11   Plaintiff's counsel made it seem like as if it's really a low

12   bar to obtain additional jurisdictional discovery, but that is

13   false.

14        In our earlier briefing we cited a case from the Western

15   District of Texas that articulates what the standard is, and

16   that's on Page 3 of the second slide presentation, and it says:

17   As the party opposing dismissal and requesting discovery, the

18   plaintiffs bear the burden of demonstrating the necessity of

19   discovery.  A plaintiff seeking jurisdictional discovery is

20   expected to identify with particularity the discovery sought,

21   explain what information it expects to obtain, and explain how

22   that information would support the assertion of personal

23   jurisdiction.

24        Another case on Page 4, the Firefighters case, is also

25   instructive.  We cited this in our briefing as well.

1    Jurisdictional discovery must be denied where plaintiffs have

2    failed to identify what they believe discovery would reveal or

3    how these newly discovered facts would establish personal

4    jurisdiction over named defendant.

5         And I think that that's really key, that the

6    jurisdiction -- the jurisdictional discovery is regarding the

7    named defendant.  The jurisdictional discovery that the

8    plaintiff is seeking regarding who manufactures the products if

9    it's not the foreign Lenovo defendants that are currently named

10   is not jurisdictional discovery that allows us to ascertain

11   jurisdiction over the currently named defendants.  And if you

12   look at the way that jurisdictional discovery is ordered in the

13   cases, all the cases that I've seen order jurisdictional

14   discovery about the named defendants.  And there are cases out

15   there that say that jurisdictional discovery should not be used

16   as a means for a fishing expedition.

17        THE COURT:  No.  No.  Let me assure you that's what I'm --

18   I would be limiting the discovery to the named defendants.  I

19   get that.  And also my general sense from having sat on the

20   plaintiff's side occasionally is I don't think the plaintiffs

21   have really any interest.  It's kind of a pyrrhic victory for

22   me to deny their -- the motion to dismiss here, go all the way

23   through trial and have them find out that these two entities

24   don't infringe or don't do what they say.  So my sense is,

25   while you've done a very good job in protecting Lenovo's

1   interest, and I understand why you would oppose wanting to

2   allow this discovery to take place, I could even imagine the

3   phone call with your client if you had to tell them I permitted

4   this to go forward.  I had some of those phone calls too, but

5   it seems to me that the one area where your interest and the

6   plaintiff's interest is aligned 100 percent here is in making

7   sure that Lenovo Group and, I apologize, the other Lenovo

8   entity are the appropriate entities.  And I don't see the

9   plaintiff's counsel wanting to spend any more money

10  accomplishing that than the minimal that it would take.  You

11  all don't want to give them any more discovery than the minimal

12  it would take, and what my hope would be is that you all could,

13  on a fairly rapid basis, come to an agreement on what discovery

14  the plaintiff feels it would need to take from the named

15  defendants only, not a fishing expedition, but it seems to me

16  the plaintiffs have a bigger interest really than you all do in

17  making sure that these are the right entities and not just

18  staying here.

19      And so I think what I'm going to do is I'm going to order

20  that you all get together and have the -- let the plaintiffs

21  tell you what discovery they think would be necessary that is

22  limited to establishing that the two Lenovo entities that are

23  in this lawsuit infringe, and what I mean -- not that they

24  practice it, but I'm saying that they either make, sell or

25  whatever, and if you all can't come up with -- if you all can't

46

1   come up with an agreement as to the scope of that discovery, we

2   can get on a phone call.  I'm relatively experienced at this

3   kind of stuff, and I would be happy to get on the phone with

4   you and have you all tell me -- have them tell me what they

5   need that you don't want, and you would tell me why you don't

6   want it and why they shouldn't get it.  I think we would be

7   able to resolve it, but I'd like to get that done pretty

8   quickly, and it seems to me fair.

9       The plaintiffs really have two choices here.  They can

10  take your option of suing Lenovo U.S., which you've

11  indicated -- I'm not saying they would wind up here, but they

12  can do that, or they can invest in the discovery they need to

13  establish a predicate for being here.  And it seems to me you

14  all should be able to work out the scope of that discovery, but

15  if you can't -- you're protecting your client, they're

16  protecting theirs -- I'll be happy to get involved in that

17  scope.  And all I care about is that you get that done pretty

18  quickly.

19      And it seems to me that if the plaintiffs are unable to

20  obtain discovery that would satisfy me, it won't satisfy them

21  either that they want to maintain this suit against those two

22  entities.  They either have the right to two entities or they

23  don't.  So I'll limit it to that, but I assume -- if they were

24  to take depositions, would those depositions be in Asia?

25      MS. YIP:  So, Your Honor, first of all, thank you so much

1   for your comments.  I appreciate them very much.

2        So actually when we were negotiating the timing of the

3   deposition of the corporate representative that Your Honor had

4   ordered, we had teed up the possibility of a witness located in

5   China, and the plaintiff's counsel did not express any interest

6   in that and repeated their desire to depose Mr. Cranor, and we

7   did make Mr. Cranor available.  So a witness in China is a

8   possibility, although we haven't looked into that.

9        THE COURT:  Or somewhere close to there since my

10  recollection is China's not overly hospitable but Macau has

11  some lovely hotels.

12       MS. YIP:  It does.  It absolutely does.  Yes.  Yes.

13       THE COURT:  Hong Kong is nice this time of year.

14       MS. YIP:  It's lovely.  Yes.

15       THE COURT:  So I've taken depositions in all those places

16  and was grateful to get to go there.

17       Well, here's what I'm going to do:  You all are

18  exceptionally good lawyers.  I think you all know the scope of

19  discovery I intend for you all to be allowed to be taken.  I

20  understand it would have to be -- it's up to the plaintiffs.  I

21  will say probably on the record as it stands now, I would be

22  predisposed towards not keeping this case here on the record

23  that I have.  I haven't made up my mind.  I think your argument

24  was pretty persuasive.  That being said, I want to give the

25  plaintiffs the decision -- they have a decision to make if they

1   want to take you up on what I would strongly suggest is an

2   offer your client ought to make that someone will be made

3   available on behalf of the two named defendants for them to

4   take discovery of to establish that they are infringing.

5   Again, I'm talking about only in terms of make, sell, use,

6   whatever, not proof -- not discovery into proving infringement,

7   but really I'll allow the plaintiff to have that opportunity to

8   do that discovery if they want to, and I just would like for it

9   to happen as quickly as possible.

10      MS. YIP:  I understand, Your Honor.  And, again, I

11   appreciate your comments.

12      We certainly share the concern about being forced to

13   litigate -- the Lenovo defendants being forced to litigate this

14   case when in fact they do not have anything to do with the

15   accused products in the United States, and that is certainly

16   the subject of my colleague Martin Bader's motion to sever and

17   stay, and --

18      THE COURT:  I think if you're correct, the plaintiffs -- I

19   know at least one of the plaintiff's counsel pretty well.  I

20   don't think they have any interest in going all the way through

21   this process with your clients if they are able to determine

22   early on that that's a fool's errand.

23      So I'm going to hold off on ruling on these motions until

24   you all are able -- would you all -- do you think you all would

25   be able to get this done within a month?

1       MS. YIP:  I think that --

2       MR. BADER:  I think so.  However, the folks in China in

3   setting up that deposition are notoriously kind of hard to --

4       THE COURT:  Well, you might tell them that I might -- that

5   I can keep them in here a lot longer and do this later if they

6   think that would be preferable.  And so I'm giving them a

7   possible exit out early if it turns out one way.  They're not

8   getting out until we have this discovery taken.  So it's

9   really -- you can tell them they can -- it's not Chinese New

10  Year.  I've been through that too.  So tell them they can be as

11  cooperative as they want to be.  Waco will be just a fine place

12  for them to be down the road if they're uninterested in going

13  this route.

14      MR. BADER:  Understood.  We'll do everything we can to get

15  someone available.

16      THE COURT:  And, seriously, here's the deal:  I don't

17  think we've set a Markman in this, have we?  You know, y'all

18  want -- I say this collectively -- want to get all this done

19  before -- it's not going to be any additional effort on the

20  plaintiffs to be preparing for the Markman.  The sooner you all

21  can get this done and we can get this resolved, the sooner I

22  can either keep you in or let your folks out, and you get out

23  of the wonders of drafting Markman briefs.  So tell your

24  clients it's really a business decision of theirs how involved

25  they want to remain in this litigation.

1      MS. YIP:  Your Honor, would it be okay with you if I take

2  one last shot at trying to present some additional thoughts on

3  this issue?

4      THE COURT:  I'm pretty comfortable with where I'm at right

5  now.  You've done a fabulous job.  Like I said, Paul Luckern

6  always said that to me in the ITC, but he said it to everyone

7  and usually it was right after he said something ugly and so

8  I'm not sure that's always a compliment, but I sincerely mean

9  you did a terrific job.  Very persuasive.  I think the

10  plaintiffs have legitimately raised an issue of they only have

11  so much transparency into what your two clients actually do

12  that might be jurisdictional for a claim of patent

13  infringement, and I want to give them an opportunity -- if --

14  they're not going to spend the money to do it, I wouldn't

15  think, unless they believe in good faith it's worth doing it.

16  I'm actually doing, in my opinion, your client a favor.  They

17  may not feel that way.  They probably won't tell you that they

18  think it was, but it seems to me there's no better evidence of

19  good faith on the part of the plaintiffs that they believe

20  these two entities belong in the lawsuit than if they are

21  willing to go to China and get the evidence that they believe

22  exists.  I think that's a pretty fair resolution of dealing

23  with this.

24      And I'll say this:  I'm not telling the plaintiffs they

25  have to do this.  If the plaintiffs decide not to do this,

1   we'll stand on the record.  I'll rule on these motions.  If

2   they tell me they do want to do it, then just -- I would try

3   and get it done within a month.  And if you have any issues

4   about the scope, I really don't -- the thing I hated the most

5   was, you know, oh, you can only have three hours, you can have

6   eight.  You know, y'all spend eight hours fighting over the

7   number of hours.  You know, if there are issues like that, just

8   call me.  I'll listen to why they want four days in Macau and

9   you only want an hour and I will come up with something I think

10  is a reasonable resolution of that as well.  I don't want y'all

11  spending a lot of time fighting over stuff like that, which I

12  know occasionally patent lawyers can do.

13       You know, I've been through all this, and I didn't mind

14  any of it other than the fighting over what was going to

15  happen.  I never enjoyed that very much or thought it was very

16  productive.  So if you all can't agree to anything, call, and

17  with a song in my heart and great joy, I'll be happy to take

18  the phone call and resolve it for you.  Although, I'll say, as

19  always, which I say to my two teenage sons, you are always

20  better off resolving it yourselves in terms of getting what you

21  want.  I can be relatively arbitrary in my decision and it

22  doesn't affect me as much.

23       Thank you all for being here.  Everyone did a great job.

24  This is the greatest job in the world because we've got great

25  lawyers.

1          What do I need to do?

2          (Brief off-the-record discussion.)

3          THE COURT:  The motion to sever?  I'm going to hold off on

4     the motion to sever until we get this done, if that wasn't

5     clear.  And so we'll take up the other motion -- I thank you

6     for reminding me, but I want to get this done and that may

7     obviate the need to take up any of the other motions.  I think

8     it would.

9          MS. YIP:  Thank you so much for your time, Your Honor.

10         THE COURT:  Thank you for being here.

11         (Hearing adjourned at 11:54 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS     )

3

4      I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8      I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10 United States.

11     Certified to by me this 4th day of June 2019.

12

13                          */s/ Kristie M. Davis*
                           KRISTIE M. DAVIS
                           Official Court Reporter
14                         800 Franklin Avenue, Suite 316
                           Waco, Texas 76701
15                         (254) 340-6114
                           kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25