**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| AMERICAN PATENTS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION No. 6:18-CV-339-ADA |
| | § | |
| MEDIATEK INC., MEDIATEK USA INC., | § | JURY TRIAL DEMANDED |
| BROADCOM PTE LTD, BROADCOM | § | |
| CORPORATION, LENOVO (SHANGHAI) | § | |
| ELECTRONICS TECHNOLOGY CO. LTD., | § | |
| LENOVO GROUP, LTD., NXP | § | |
| SEMICONDUCTORS N.V., NXP B.V., NXP | § | |
| USA, INC., QUALCOMM INCORPORATED | § | |
| and QUALCOMM TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
ENTRY OF FORM PROTECTIVE ORDER AND CROSS-MOTION
FOR ENTRY OF DEFENDANTS' PROPOSED PROTECTIVE ORDER**

Defendants MediaTek Inc., MediaTek USA Inc., Broadcom Pte Ltd., Broadcom Corporation, Lenovo (Shanghai) Electronics Technology Co. Ltd., Lenovo Group, Ltd., NXP Semiconductors N.V., NXP B.V., NXP USA, Inc., Qualcomm Incorporated and Qualcomm Technologies, Inc. (collectively, "Defendants"), by and through their undersigned counsel, hereby oppose Plaintiff American Patents LLC's Motion for Entry of Form Protective Order (Dkt. No. 138), and cross-move for entry of a Protective Order that has been collectively prepared and agreed to by all Defendants ("Defendants' Proposed Protective Order").

Plaintiff's Motion should be denied, as the "Form Protective Order" Plaintiff unilaterally proposed does not provide adequate protections for Defendants' extremely sensitive and highly confidential information, which they are required to produce on August 30, 2019, and the additional confidential information and source code that Plaintiff will likely seek from

Defendants once fact discovery in this case begins.  As such, Defendants hereby cross-move for entry of Defendants' Proposed Protective Order, attached hereto as Exhibit A, which Defendants collectively prepared and all Defendants agree provides adequate protections for Defendants' valuable and confidential technical and business information.[1]

In its Motion, Plaintiff omits the history of this dispute, including Plaintiff's ever-shifting position on which proposed protective order Plaintiff sought to enter, Plaintiff's refusal to negotiate with Defendants regarding Defendants' Proposed Protective Order, and Plaintiff's claims that certain provisions in Defendants' Proposed Protective Order "made no sense," even though those same types of provisions appear in the protective order Plaintiff initially proposed. For all these reasons, Plaintiff's Motion should be denied, and Defendants' Cross-Motion should be granted.

## I.     FACTUAL BACKGROUND

Plaintiff filed its Original Complaint for Patent Litigation against Defendants on November 14, 2018.  Dkt. No. 1.  Therein, Plaintiff asserted four patents against Defendants that Plaintiff claims "generally pertain to on-chip service capabilities used in integrated circuits." *Id.* at 11, ¶ 45.  On June 18, 2019, the Court sent a template for a Scheduling Order to the parties to foster negotiations on a case schedule.  The next day, Defendants began collectively working on a draft protective order to protect the confidential technical and sales information that Defendants would be required to produce for the accused products identified in Plaintiff's forthcoming preliminary infringement contentions.  On June 24, 2019, the Court entered an

---

[1]     Defendants' Proposed Protective Order contains many of the same provisions that have been entered by other courts in patent litigations. *See, e.g.*, *In Re Koninklijke Philips Patent Litigation*, No. 18-cv-01885, Dkt. No. 132 (N.D. Cal. Feb. 23, 2017); *Evolved Wireless, LLC v. HTC Corp., et al.*, No. 15-cv-543, Dkt. No. 37 (D. Del. Mar 15, 2016); *Uniloc USA, Inc., et al. v. Motorola Mobility, LLC*, No. 17-cv-1658, Dkt. No. 32 (D. Del. Aug. 10, 2018).

Agreed Scheduling Order, which required Plaintiff to serve its preliminary infringement contentions on July 2, 2019, and Defendants to serve "technical documents, including software where applicable, sufficient to show the operation of the accused product(s)" and "summary, annual sales information for the accused product(s) for the prior two years" on August 30, 2019. Dkt. No. 121 at 2.

On July 2, 2019, Plaintiff served its preliminary infringement contentions, which allege that nearly 700 of Defendants' products infringe each asserted claim of the four asserted patents.[2]  On August 1, 2019, just as all five Defendant groups were finalizing their agreement to the form and substance of Defendants' Proposed Protective Order, Plaintiff sent an e-mail to Defendants indicating that "[i]n advance of defendants' upcoming productions, [Plaintiff] would like to get a protective order on file that allows our experts and consultants to review the materials in those productions.  Attached is a proposed Protective Order that is based on Judge Gilstrap's model Protective Order."[3]  Ex. B (e-mail from R. Pinckney to Defendants with Plaintiff's initially-proposed protective order attached (Aug. 1, 2019)).  Notably, Plaintiff's initially-proposed order includes a "prosecution bar" provision (*see id.* at ¶ 11), and a procedure for the review and production of source code.  *See id.* at ¶ 10.

The next day, Defendants responded to Plaintiff and explained that "[w]hile we appreciate Plaintiff providing a proposed Protective Order, Defendants have also been working on a proposed Protective Order ….  As all the Defendants have already agreed to the attached

---

[2]    The parties currently have a dispute as to the sufficiency of Plaintiff's preliminary infringement contentions, and Defendants' corresponding production obligations, which the parties raised in correspondence with the Court on August 12, 2019.

[3]    Chief District Judge Rodney Gilstrap in the Eastern District of Texas provides a sample protective order for patent cases.  *See* http://www.txed.uscourts.gov/sites/default/files/judgeFiles/Sample_Protective_Order_Patent_Ca ses_%28April%202019%29.docx.

3

Protective Order, we think it would be more efficient if the parties could work from Defendants' proposed Protective Order." Ex. C (e-mail from R. Levinson to R. Pinckney (Aug. 2, 2019)). Similar to Plaintiff's initially-proposed protective order, Defendants' Proposed Protective Order includes a "prosecution bar" (*see* Ex. A at ¶ 9) and procedures for the review and production of source code. *See id.* at ¶ 12. Plaintiff responded on August 6, 2019, and stated:

> We are not willing to work off of Defendants protective [sic], especially since we sent y'all our draft first. We proposed the Gilstrap protective order as a compromise seeing as it contains many provisions that defendants often request. Since Defendants do not want to work off of that draft, we will ask the Court to make one small change to the current protective order so that experts can review confidential information. We assume y'all oppose this change, and we will file an opposed motion to make this change unless y'all inform us otherwise.

Ex. D (e-mail from Z. Harrington to R. Levinson (Aug. 6, 2019)).

Defendants responded that same day, and informed Plaintiff that they were "disappointed to hear that Plaintiff is not willing to even discuss the protective order that Defendants have proposed to protect their confidential information," and further explained that there is no "current protective order" in place.[4] Ex. E (e-mail from T. VanHoutan to Z. Harrington (Aug. 6, 2019)). Defendants also noted that it was necessary to meet and confer pursuant to Local Rule CV-7(i) before Plaintiff could unilaterally move to enter any protective order. *Id*. In response, Plaintiff circulated a "proposed modified interim protective order" that Plaintiff sought to enter while the parties discussed "proposed provisions for a final protective order," which Plaintiff contended "should be presented as a redline against our proposed final protective order," *i.e.*, Judge Gilstrap's model Protective Order. Ex. F (e-mail from Z. Harrington to T. VanHoutan with Plaintiff's "proposed modified interim protective order" attached (Aug. 6, 2019)).

---

[4]    While the "Order Governing Proceedings – Patent Case" that was sent to the parties by the Court on June 18, 2019 included an "interim protective order" provision, the "Order Governing Proceedings" was never entered by the Court. Rather, the parties only moved the Court for entry of an Agreed Scheduling Order. *See* Dkt. Nos. 118 and 121. Thus, there is no "interim protective order" currently governing this case.

The parties met and conferred on August 8, 2019, during which Plaintiff confirmed that it would not negotiate with Defendants on their Proposed Protective Order.  When asked what specifically about Defendants' Proposed Protective Order was problematic for Plaintiff, Plaintiff claimed that the "prosecution bar" and the source code provisions were not appropriate for this case.  Upon inquiry from Defendants, Plaintiff confirmed that Plaintiff's law firm did not currently engage in patent prosecution.  Moreover, Plaintiff would not confirm that Plaintiff would not be seeking the production of Defendants' source code.  The parties concluded the meet and confer without resolving the dispute, and Plaintiff indicated that it would file a motion for entry of its "modified interim protective order."

Later that day, Plaintiff changed its position, advising Defendants that "it probably makes sense to move forward to a final protective order instead of a modified interim protective order." Ex. G (e-mail from Z. Harrington to Defendants' counsel (Aug. 8, 2019)).  However, rather than propose entry of Plaintiff's initially-proposed protective order based on Judge Gilstrap's model Protective Order, Plaintiff indicated that it would move for entry of the form protective order set forth in Appendix H to the Court's Local Rules.  *See id*.

Defendants responded the next day and noted that the "form protective order … does not provide adequate protections for Defendants' confidential information.  We again urge Plaintiff to reconsider its position and work with Defendants on a mutually-agreeable protective order, starting with the draft Protective Order that all of the Defendants have already agreed to."  Ex. H (e-mail from T. VanHoutan to Z. Harrington (Aug. 09, 2019)).  Despite the fact that the parties had not met and conferred on the Appendix H "form protective order," Plaintiff responded that it already had proposed edits to Defendants' Proposed Protective Order – "delete everything that exceeds the protections provided in [Appendix] H.  All of defendants' additional provisions are

unnecessary and unwarranted."  Ex. I (e-mail from Z. Harrington to T. VanHoutan (Aug. 09, 2019)).  Plaintiff further claimed that it "went through a list of specific objections to several of the provisions that defendants are asking for [during the meet and confer].  For example, I explained why defendants' proposed one-way prosecution bar made no sense.  I also explained that I didn't think the source code provisions made sense given that defendants have not indicated that they are going to be producing source code at the end of the month."  *Id*.   On August 12, 2019, Plaintiff filed the present Motion.

## II.    ARGUMENT

Defendants agree with Plaintiff that "[g]ood cause exists" to enter a protective order in this case.  Dkt. No. 138 at 1.  "[O]n August 30 Defendants must produce, among other things, their technical documents showing the operation of the accused products."  *Id*. at 2.  While there is a dispute between the parties on the scope of the "accused products," there is no dispute that Plaintiff has accused "on-chip service capabilities used in [Defendants'] integrated circuits." Dkt. No. 1 at 11, ¶ 45.  Thus, pursuant to the Agreed Scheduling Order, Defendants are obligated on August 30th to produce "technical documents, including software where applicable, sufficient to show the operation of the accused product(s)," and "summary, annual sales information for the accused product(s) for the prior two years."  Dkt. No. 121 at 2.

Documents evidencing the "operation of" Defendants' "integrated circuits," and sales information related to those "integrated circuits," contain Defendants' extremely sensitive, proprietary, and confidential information, and represent some of Defendants' most valuable intellectual property and company information.  Moreover, since Plaintiff has moved to enter a "final protective order" (as opposed to an "interim" order), the protective order that is entered now will govern Defendants' subsequent productions once fact discovery begins – which may

6

include the production of the source code underlying Defendants' "integrated circuits," some of Defendants' most valuable property.  Thus, the parties agree that "good cause" exists pursuant to Local Rule CV-26(c) for the entry of a protective order to protect the disclosure of Defendants' valuable and confidential information.

What the parties do not agree on are the provisions necessary to protect Defendants' confidential information that will be produced in this case.  According to Plaintiff, Appendix H is sufficient "at least because it sets forth a procedure for allowing experts and consultants to review confidential information."  Dkt. No. 138 at 1.  As an initial matter, the ability of Plaintiff's experts to review Defendants' confidential information is not the only consideration. That access must be balanced with the provisions necessary to protect Defendants' confidential information that will be produced to Plaintiff (and reviewed by Plaintiff's "experts and consultants").  Plaintiff's repeated assertion that expert access is the only provision that is necessary for a protective order in a patent case (involving the design and functionality of "integrated circuits") demonstrates Plaintiff's lack of awareness of, or disregard for, the proprietary and confidential nature of the information that Defendants will be required to produce.

Moreover, unlike Defendants' Proposed Protective Order, Appendix H is not specific to a patent case, let alone a complex patent case involving the "integrated circuits" of multiple Defendants that are competitors.  Critically, Appendix H allows for the "Confidential information" of one Defendant to be provided to the "officers or employees of [other Defendants] who are actively involved in the prosecution or defense of this case."  Dkt. No. 138, Ex. A at ¶ 2.b.iii.  Moreover, Appendix H does not provide a right to exclude such persons from a deposition in which the Defendant's "Confidential information" is disclosed.  *Id.* at ¶ 6.

Further, Appendix H allows for the disclosure of Defendants' "Classified Information" to "potential" (as opposed to vetted and retained) independent experts or consultants and does not specify what (if any) information is required to be disclosed to designate an expert or consultant. *Id.* at ¶ 2.a.ii.   Additionally, Appendix H does not outline a procedure for the review and production of source code – which Plaintiff admitted may be relevant in this case.[5]  As such, Appendix H is inadequate to govern the production of Defendants' most valuable and confidential material.[6]

As opposed to Appendix H, Defendants' Proposed Protective Order provides adequate and reasonable protections for Defendants' confidential information (and affords Plaintiff and its experts and consultants access to that information).  These protections were negotiated between the five Defendant groups (most of which are direct competitors) and their counsel over the course of a month and a half, and agreement was secured between the Defendants only through significant effort.  Given that fact, Defendants were surprised when Plaintiff refused to negotiate with Defendants regarding their Proposed Protective Order.  *See* Ex. D.  When Defendants asked why Plaintiff was opposed to redlining Defendants' Proposed Protective Order, the only reason Plaintiff (repeatedly) gave was that the "prosecution bar" and source code provisions in Defendants' Proposed Protective Order "made no sense."  *See, e.g.*, Ex. H.  However, Plaintiff's two objections to Defendants' Proposed Protective Order ring hollow as Plaintiff's originally-proposed protective order ***contains those very same types of provisions***.  *See* Ex. B at ¶ 11

---

[5]     Moreover, even if Plaintiff ultimately elected not to pursue discovery of source code, Defendants may opt to produce it in aid of their defenses, thus further warranting source code provisions in Defendants' Proposed Protective Order.

[6]     In addition to Defendants' confidential information and source code, Plaintiff also pays no mind to the confidential information and source code of third-parties, which are likely to be at issue in this case.  For example, the majority of Plaintiff's allegations in its Original Complaint cite to documents from ARM Ltd., a third-party provider of technology incorporated into the accused products.

(prosecution bar) and ¶ 10 (source code provisions).  Such provisions are common in patent cases, *given that they are part of Judge Gilstrap's model Protective Order for patent cases*, and, as Plaintiff acknowledged, are "provisions that defendants often request."  *Id.* at 1.

The only basis Plaintiff articulated for its Motion is that "Plaintiff needs its technical experts and consultants to have access to [Defendants' August 30th production] to assist Plaintiff in preparing for the claim construction process, which begins shortly thereafter."  Dkt. No. 138 at 2.  However, Plaintiff has not identified a single provision of Defendants' Proposed Protective Order that would preclude such access.  Further, as the only two provisions from Defendants' Proposed Protective Order to which Plaintiff objected during the meet and confer are both common to patent cases and originally proposed by Plaintiff (indicating that Plaintiff believes that their inclusion in a protective order in this case is reasonable and appropriate), Plaintiff has no legitimate objection to the entry of Defendants' Proposed Protective Order.

Therefore, as all five Defendant groups have agreed to Defendants' Proposed Protective Order, and it will adequately protect Defendants' valuable, confidential information while also allowing Plaintiff to prosecute its case, Defendants respectfully request that the Court deny Plaintiff's request to enter the "Form Protective Order" in Appendix H, and grant Defendants' request to enter Defendants' Proposed Protective Order, attached hereto as Exhibit A.

### III.    CONCLUSION

For all the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion for Entry of Form Protective Order, and grant Defendants' Cross-Motion for Entry of Defendants' Proposed Protective Order.

Dated:  August 19, 2019

Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
FINDLAY CRAFT
102 North College Ave., Suite 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137 (Fax)
EFindlay@FindlayCraft.com

Martin Bader (Admitted *Pro Hac Vice*)
Michael J. Hopkins (Admitted *Pro Hac Vice*)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-4092
(858) 720-8900
(858) 509-3691 (Fax)
mbader@sheppardmullin.com
mhopkins@sheppardmullin.com

Lai L. Yip (Admitted *Pro Hac Vice*)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 434-9100
(415) 434-3947 (Fax)
lyip@sheppardmullin.com

*Counsel for Lenovo (Shanghai) Electronics*
*Technology Co., Ltd. and Lenovo Group Ltd.*

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan
Texas Bar No. 24033290
MCGUIREWOODS LLP
600 Travis St., Suite 7500
Houston, TX 77002
(713) 571-9191
(713) 571-9652 (Fax)
tvanhoutan@mcguirewoods.com

Rebecca Levinson (Admitted *Pro Hac Vice*)
MCGUIREWOODS LLP
2001 K Street N.W., Suite 400
Washington, DC  20006
(202) 828-2816
(202) 828-3322 (Fax)
rlevinson@mcguirewoods.com

Paige Arnette Amstutz
Texas Bar No. 00796136
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado St., Suite 2400
Austin, TX 78701
(512) 495-6300
(512) 495-6399 (Fax)
pamstutz@scottdoug.com

*Counsel for MediaTek Inc., MediaTek USA*
*Inc., Broadcom Pte Ltd., Broadcom*
*Corporation, NXP Semiconductors N.V.,*
*NXP B.V., NXP USA, Inc., Qualcomm*
*Incorporated and Qualcomm Technologies,*
*Inc.*

Gilbert A. Greene
Texas Bar No. 24045976
Pierre J. Hubert
Texas Bar No. 24002317
DUANE MORRIS LLP
900 S. Capital of Texas Hwy, Suite 300
Austin, TX 78746
(512) 277-2300
(512) 277-2301 (Fax)
BGreene@duanemorris.com
PJHubert@duanemorris.com

Kevin Anderson (Admitted *Pro Hac Vice*)
DUANE MORRIS, LLP
505 9th St., N.W., Suite 1000
Washington, DC 20004-2166
(202) 776-7800
kpanderson@duanemorris.com

*Counsel for NXP Semiconductors N.V.,*
*NXP B.V., NXP USA, Inc.,*
*Qualcomm Incorporated and*
*Qualcomm Technologies, Inc.*

Jonah D. Mitchell (Admitted *Pro Hac Vice*)
Doyle B. Johnson (Admitted *Pro Hac Vice*)
Osman Mohammed (Admitted *Pro Hac Vice*)
REED SMITH LLP
101 2nd St., Suite 1800
San Francisco, CA 94105
(415) 543-8700
(415) 391-8269 (Fax)
jmitchell@reedsmith.com
dbjohnson@reedsmith.com
omohammed@reedsmith.com

R. Jeffrey Layne
Texas Bar No. 00791083
Megan Alter Hudgeons
Texas Bar No. 24001645
REED SMITH LLP
111 Congress Ave., Suite 400
Austin, TX 78701
(512) 563-1816
(512) 623-1802 (Fax)
mhudgeons@reedsmith.com
jlayne@reedsmith.com

*Counsel for Qualcomm Incorporated and*
*Qualcomm Technologies, Inc.*

Eric W. Schweibenz (Admitted *Pro Hac Vice*)
John S. Kern (Admitted *Pro Hac Vice*)
Alexander B. Englehart (Admitted *Pro Hac Vice*)
Oblon, McClelland, Maier & Neustadt, LLP
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
eschweibenz@oblon.com
jkern@oblon.com
aenglehart@oblon.com

*Counsel for MediaTek Inc. and*
*MediaTek USA Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served on this 19th day of August 2019, with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Tyler T. VanHoutan*
Tyler T. VanHoutan