# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC, <br><br> Plaintiff, <br><br> v. <br><br> MEDIATEK INC., ET AL., <br><br> Defendants. | CIVIL ACTION NO. 6:18-cv-339 <br><br> **JURY TRIAL DEMANDED** |

## AMERICAN PATENTS' SUR-REPLY TO DEFENDANTS' CROSS-MOTION FOR ENTRY OF DEFENDANTS' PROPOSED PROTECTIVE ORDER

## I.     DEFENDANTS OFFER RHETORIC INSTEAD OF SHOWING GOOD CAUSE

Faced with American Patents' several specific and detailed objections to their proposed protective order, Defendants continue to ignore their burden to show good cause. Instead, Defendants try to rely on two illogical, "waiver"-like rhetorical arguments. First, they say that, because American Patents initially proposed adopting Judge Gilstrap's standard patent protective order as a compromise, American Patents has somehow "admitted" that good cause exists for entering the several pages of unduly restrictive terms that Defendants classify as a "prosecution bar" and "source code provisions"—even though Defendants' proposed terms look nothing like Judge Gilstrap's. Second, Defendants contend that by allegedly only objecting to the "existence" of a prosecution bar and source code provisions in the parties' meet-and-confer conference,[1] American Patents has somehow waived its objections to anything else in defendants' proposed protective order, and that this purported waiver somehow satisfies Defendants' burden to show good cause. Unsurprisingly, defendants cite no authority to support these farfetched arguments.

As to their first argument, even presuming that American Patents agreed that good cause exists to enter Judge Gilstrap's standard protective order, Defendants provide no grounds for entering any terms that are more restrictive than the exact terms of Judge Gilstrap's order.[2] This is particularly so in light of the multiple (and non-exhaustive) differences that American Patents highlighted between Judge Gilstrap's standard protective order and Defendants' proposal. *See* Dkt. 145 at 5-6. Defendants fail to even respond to these arguments, let alone try to provide good cause for the more restrictive provisions of their protective order.

---

[1] American objected to all provisions of defendants' proposed protective order that go beyond the requirements of Appendix H, but offered to consider any specific provisions of that order that Defendant could provide good cause therefor. Defendants refused to do so.

[2] American Patents believes that this Court's form protective order (Appendix H) sufficiently protects the parties' interests in their confidential information. But were the Court to find that there is good cause for patent-specific provisions such as a prosecution bar and source code provisions, the Court should adopt the relevant provisions from Judge Gilstrap's standard protective order. (The Court could, for example, direct the parties to confer on modifications to Appendix H that incorporate certain provisions from Judge Gilstrap's standard order.)

1

Instead, Defendants rest on their second "waiver" argument: that American Patents only has the right to object to the "existence" of the prosecution bar and source code provisions, because it allegedly did not raise every objection and sub-objection during the parties' meet and confer. But Defendants cite no authority holding that every specific detail not raised in a meet-and-confer conference is waived, especially when it remains their burden to show good cause for each provision of their proposal that goes beyond the Court's standard protective order. *See, e.g.*, *MiMedx Grp., Inc. v. Tissue Transplant Tech., Ltd.*, No. SA-14-CA-719, 2014 WL 12634550, at *1-2 W.D. Tex. Oct. 31, 2014) (Defendants' proposed order is "more restrictive than the standard protective order, so the burden of establishing good cause falls on the[m]." (internal quotations omitted)).

As their own briefing reveals, Defendants gave no factual evidence or justification for their proposed terms at the parties' meet-and-confer conference. In fact, Defendants claimed that they need not show good cause at all! So if there has been any waiver, it is **Defendants** who have waived their ability to assert that good cause exists for their proposed protective order.

## II.     EVEN ON REPLY, DEFENDANTS STILL REFUSE TO SHOW GOOD CAUSE

On the merits, Defendants have not shown that good cause exists to enter their thirty-five page, one-sided, unduly restrictive protective order. Defendants' reply does nothing to address any of the arguments from their cross motion that were refuted in Plaintiff's opposition:

**1) Depositions.** As an initial matter, Defendants do not dispute that this Court's form protective order, Appendix H, adequately protects any of Defendant's "Confidential Information" disclosed in depositions. *See* Dkt. 145 at 8-9.

**2) Prosecution Bar.** Defendants have failed to show good cause for entry of their "Prosecution and Acquisition Bar," which in reality contains prosecution, acquisition, and development bars. Defendants' reliance on the "fundamental nature of patent litigation" is not sufficient to show good cause for a prosecution bar—and certainly not one more restrictive than Judge Gilstrap's standard order. Indeed, this Court has previously entered its standard protective order over a proposed prosecution bar in a patent case involving the production of technical

information.  *See MiMedx Group*, 2014 WL 12634550, at *1-2; *see also id.* at *2 ("To show good cause, '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).  If anything, the "fundamental nature of patent litigation" supports the entry of Appendix H's provisions governing confidential and ultrasensitive information—but it says nothing about the need for a prosecution bar, much less acquisition or development bars.

As previously explained, a prosecution bar requires concrete and detailed support showing counsel's level of involvement in patent prosecution and competitive decision-making, as well as balancing the risk against the harm to the opposing party from "restrictions imposed on that party's right to have the benefit of counsel of its choice."  *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378-81 (Fed. Cir. 2010); *MiMedx Group*, 2014 WL 12634550, at *2.  Defendants have fallen far short of the required showing.  They rely on only a single sentence in Plaintiff's opposition brief, which is not evidence of prosecution activity relating to the patents or subject matter of this lawsuit.[3]  *See* Dkt. 147 at 6.  Elsewhere, Defendants again improperly seek to shift the burden to American Patents to prove a negative. *Id.* at 6 n.10.  And though Defendants brush off the implications of their proposed terms as not "expressly prohibit[ing]" participation in *inter partes* review, that in no way assuages American Patents' concerns.

Finally, Defendants argue that a two-way prosecution bar is unnecessary because their proposed order does not give individual Defendants access to each other's confidential technical information.  Not so.  Defendants' proposal only prohibits American from unilaterally disclosing their technical information to outside counsel and experts for the other defendants.  It does not

---

[3] Neither of American's law firms in this case—i.e., Antonelli, Harrington, & Thompson LLP and The Stafford Davis Firm—has appeared on behalf of a client as part of any patent prosecution proceeding (whether original prosecution or reexamination).  Nor has either firm appeared in an *inter partes* review or other post-grant challenge in the PTAB on behalf of any client that has sought to amend patent claims in that proceeding.

3

bar Defendants from choosing to share such information with outside counsel and experts hired by their co-defendants.[4]

And that highlights the elephant in the room concerning the alleged danger of commingling Defendants' confidential information: *several Defendants are represented by the same outside counsel* (and from law firms with patent prosecution practices, no less). Many of Defendants' outside counsel will thus be in possession of and have access to confidential technical information from multiple Defendants. That strongly suggests that (1) the danger of commingling is not as dire as Defendants claim, and/or (2) a standard "Outside Counsel Only" designation will protect Defendants' technical information. Defendants have failed to justify any prosecution bar, let alone the one-sided bar that Defendants propose—especially since Defendants admit that they are direct competitors with each other, but not with American.

**3) Source Code.** Defendants complain that American Patents "falls back on its mantra that 'Defendants fail to provide good cause . . . .'" Dkt. 147 at 8. This is not a "mantra"; this is the law. And rather than provide the required affirmative support for their proposed terms, Defendants once again attempt to shift the burden onto American Patents, arguing that "Plaintiff cannot seriously dispute that source code is extremely confidential information . . . ." *Id.*

Though Plaintiff does not have to disprove Defendants' "stereotyped and conclusory" assertion, Plaintiff does dispute it. Simple google searches reveal numerous examples of "open source" or otherwise public code made available by electronics manufacturers—including as Defendant Qualcomm does with certain code for its accused Snapdragon 845 product! *See, e.g.,* Ex. D at 2 ["Qualcomm is able to release the Snapdragon 845 source code in 6 weeks"] ("Qualcomm releases the public parts of their chipset specific code in a way that makes it really

---

[4] In any event, defendants' proposal to bar disclosure of one defendant's information to other defendants' counsel is wholly unworkable in this case. Such a proposal might make sense when several cases that will be tried separately have been consolidated for discovery purposes. But this is a single action set for a single trial. Defendants do not begin to explain how plaintiff will have the right to develop testimony and other evidence in discovery based on one defendant's technical information, without sharing that evidence with counsel for any other defendants, but then still have the ability to introduce that evidence at the trial of all defendants.

easy for ROM developers to build for the platform without having to know how the new chipset features work."). And though Defendants suggest they may eventually produce code from third party Arm, that does not mean such code is confidential: "Arm maintains many open source projects for the benefit of [its] partners and the open source community as a whole." Ex. E at 1 [Arm Open Source Policies]. Since Defendants have not shown that any particular source code that will be produced in this case will be confidential at all—much less that it requires the draconian protections that they propose—they have not shown good cause for their source code provisions.

Further, Defendants do not dispute that Appendix H's provision governing the production of ultrasensitive information sufficiently protects any source code that may be produced. They complain instead that the protocol is triggered only by court-ordered production. But that does not prevent defendants from seeking such an order to comply with their discovery obligations. In any event, that phrasing can be easily tweaked to address this concern.[5] And especially since Defendants have not affirmatively stated whether they possess and intend to produce source code relevant to this litigation, Appendix H provides sufficient and appropriate protection at this stage.

**4) Remaining provisions.** It was Defendants' burden to show good cause for the remaining restrictions in their proposed thirty-five page order. Defendants have not even tried to do so; that failure is fatal to their cross-motion.

The Court should deny Defendants' cross motion.

Dated: September 9, 2019                    Respectfully submitted,

                                            */s/ Larry D. Thompson, Jr.*
                                            Matthew J. Antonelli (*admission pending*)
                                            Texas Bar No. 24068432
                                            matt@ahtlawfirm.com

---

[5] For example, the phrase could be amended to state: "However, in the event ~~that a court orders~~ that ultrasensitive documents or information <u>are to</u> be produced, the parties will negotiate and ask the court to enter an ultrasensitive information protocol in advance of production to further protect such information." *See* Appendix H at ¶ 3(d).

Zachariah S. Harrington (lead attorney)
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney (*admission pending*)
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
The People's Petroleum Building
102 North College Avenue, 13th Floor
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

*Attorneys for American Patents LLC*

6